# EXHIBIT 10

Clerk of the Superior Court
*** Electronically Filed ***
C. Cuellar, Deputy
7/13/2021 5:33:58 PM
Filing ID 13119333

R. Douglas Dalton, 004963
William D. Furnish, 028725
Bryce Talbot, 035756
OSBORN MALEDON, P.A.
2929 North Central Avenue, 21st Floor
Phoenix, Arizona 85012-2793
(602) 640-9000
ddalton@omlaw.com
wfurnish@omlaw.com
btalbot@omlaw.com

Attorneys for Plaintiffs

IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

IN AND FOR THE COUNTY OF MARICOPA

| | |
|---|---|
| Paul Johnson Drywall, Inc.; Johnson 2013 Irrevocable Trust, dated December 28, 2013; and RCJ Irrevocable Trust, dated April 29, 2010, <br><br> Plaintiffs, <br><br> v. <br><br> Defendant Limited Partnership, <br><br> Defendant. | No. **CV2021-011077** <br><br> **COMPLAINT FOR PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF, RESTITUTION, SPECIFIC PERFORMANCE AND DAMAGES** <br><br> (Commercial Court Assignment Requested) |

Plaintiffs Johnson 2013 Irrevocable Trust, dated December 28, 2013, RCJ Irrevocable Trust, dated April 29, 2010 (jointly the "Johnson Trusts") and Paul Johnson Drywall, Inc. ("PJD") (the Johnson Trusts and PJD are referred to jointly herein as "Johnson") allege as follows:

**PARTIES, JURISDICTION AND VENUE**

1.  PJD is and at all relevant times was an Arizona corporation organized under Arizona law and headquartered in Maricopa County, Arizona.

2.  The Johnson Trusts are irrevocable trusts organized under Arizona law.

3.  Defendant Limited Partnership ("Defendant") is a pseudonym for a real limited partnership that is neither organized under Arizona law nor headquartered in Arizona. This Complaint uses the pseudonym so consideration can be given to whether confidentiality duties created by the agreements between the Parties require special

1  protections of the identity of the Defendant in this action.  Johnson will reveal the true
2  identity of Defendant as allowed or required by law and as directed by the Court.
3           4.      The matter in controversy exceeds $300,000.
4           5.      The matter in controversy relates to trade secrets and arises from
5  agreements to protect and not to disclose or misuse valuable confidential and
6  proprietary information.
7           6.      Venue is proper in this Court pursuant to A.R.S. § 12-401(1).
8           7.      PJD and Defendant (the "Parties") entered into a Non-Disclosure
9  Agreement effective March 30, 2020 ("NDA").
10          8.      The NDA provides that the NDA is to be construed, performed and
11 enforced in accordance with, and governed by, the laws of the State of Arizona.
12          9.      By the NDA, the Parties submitted to personal jurisdiction of courts in
13 Arizona.
14          10.     Defendant has done business in Arizona relating to the NDA.
15          11.     This Court has personal jurisdiction over Defendant pursuant to Ariz. R.
16 Civ. P. 4.2(a).

## BACKGROUND

18          12.     PJD provides drywall services within the United States.
19          13.     PJD is a successful provider of drywall-related goods and services and a
20 market leader.
21          14.     As a part of its business, PJD has developed confidential and proprietary
22 business information and other trade secrets ("Protected Information").
23          15.     The Protected Information is extraordinarily valuable.
24          16.     The Protected Information provides PJD with a competitive advantage in
25 the drywall industry.
26          17.     PJD has taken reasonable and appropriate steps to protect the Protected
27 Information.
28

18. For some time during and before 2020, PJD developed a rollup thesis to acquire other drywall companies in the United States to implement and adapt its Protected Information as part of a nationwide operation ("PJD's Venture").

19. During 2020, PJD planned, analyzed, and took substantial steps to execute PJD's Venture.

20. Beginning in March 2020, Defendant and PJD were in contact concerning the possible acquisition of PJD and Defendant's participation in PJD's Venture to create a successful national drywall installation company or consortium of companies.

### Non-Disclosure Agreement

21. To this end, PJD and Defendant entered into the NDA in March 2020.

22. Among other things, the purpose of the NDA was to permit PJD to share its Protected Information with Defendant as part of the possible acquisition of PJD and participation in the venture to implement PJD's Venture of a successful national drywall company or consortium of companies.

23. From March 2020 through December 2020, PJD actively continued to pursue PJD's Venture, including finalizing financing, identifying target drywall companies, and negotiating agreements with such companies and preparing executable agreements.

24. In December 2020, Defendant informed PJD that Defendant wanted to move forward and actively create the venture anticipated by the NDA.

25. Defendant asked PJD to hold off on executing PJD's Venture, and instead to "take its foot off the gas" to allow Defendant to be able to participate in the venture ("Joint Venture").

26. In reliance upon the Defendants representations, the protections provided by the NDA, and the Parties' relationship, PJD provided voluminous and valuable Protected Information to Defendant.

27. Throughout the course of the discussions between Defendant and PJD, Defendant repeatedly solicited Protected Information from PJD under the guise of acquiring PJD and serving the Joint Venture.

28. By the NDA, the Parties agreed that PJD would disclose information to Defendant, including Confidential Information, as defined by the NDA ("Confidential Information"), in connection with Defendant's consideration of the possible negotiated acquisition of PJD by Defendant, whether by merger, consolidation, or sale of stock or substantially all of PJD's assets (the "Transaction").

29. By the NDA, Defendant agreed that it could and would keep confidential the Confidential Information provided by PJD.

30. In the NDA, Defendant also promised that it would use the Confidential Information only to evaluate, negotiate and, if applicable, consummate the Transaction.

31. By the NDA, the Parties agreed that any breach of the NDA may cause irreparable harm to the non-breaching party, which harm cannot be adequately compensated by money damages.

32. By the NDA, the Parties stipulated that seeking an order of specific performance or injunctive relief for breach of or default under the NDA would be equitable and would not work a hardship on either party.

33. The NDA also provides that, in the event of breach or default by either party, the other party may seek and obtain equitable relief, including specific performance and injunctive relief, without any bond or other security.

34. The NDA provides that it is to be construed, performed and enforced in accordance with, and governed by, the laws of the State of Arizona.

35. Pursuant to the NDA, the Parties submitted to the personal jurisdiction of courts in Arizona.

36. The NDA provides that in any action arising out of or relating to the NDA, the unsuccessful party shall pay all reasonable fees, costs and expenses incurred by the prevailing party.

4

37. Protected by the NDA, the Parties negotiated and drafted a Letter of Intent and a Purchase and Contribution Agreement wherein the equity owners of PJD, the Johnson Trusts, would participate as investors and in management of the resulting entity.

### **Letter of Intent**

38. The Parties also subsequently entered into a Letter of Intent ("LOI").

39. The LOI set forth the process by which Defendant would acquire a majority of the equity interests of PJD and pursuant to which Defendant and PJD would implement a national platform to provide drywall services in the United States.

40. By the LOI, the Parties agreed that the LOI and related information were confidential and that neither the LOI nor the related information would be disclosed to third parties.

41. The LOI also confirmed the amount of the purchase price ("Purchase Price") that Defendant would pay for the acquisition of PJD and other material terms.

42. The NDA and LOI are referred to below as the "Agreements."

43. The Agreements require that Defendant keep the specified valuable Protected Information confidential and require Defendant to deal with PJD in good faith in receiving and utilizing PJD's Protected Information and other valuable assets.

44. In addition, the actions of Defendant and the relationship between the Parties created obligations on Defendant's behalf and reasonable expectations on PJD's behalf that the Protected Information would be provided to Defendant for limited and specific business uses in which PJD would participate, namely the Joint Venture.

45. In reliance upon its reasonable expectations and Defendant's promises and other obligations, PJD provided extensive Protected Information to Defendant.

46. The Protected Information PJD provided to Defendant included valuable financial, operational, market, resources, personnel and contact information relating to PJD and the drywalling industry; information concerning markets and regions; strategy and operations models for its national platform; information concerning employee

relations; legal and regulatory compliance information; valuable vendor, supplier, customer and pricing models and information; spreadsheets, databases and other sources of financial information and analysis; valuable models and strategic and tactical advice and information; volume and related data for geographic market analysis for the drywall industry; and the identity of and valuable information about numerous identified target companies throughout the United States that are involved in the drywall business, including information about those companies necessary to determine which of those companies were likely to be the most "actionable" and profitable participants in the rollup thesis.

47. Between January and June 2021, numerous meetings and communications occurred between PJD and Defendant, including recurrent weekly meetings.

48. For these meetings, Defendant often sent lists of specific questions for PJD to answer, and in response PJD provided additional Protected Information to Defendant.

49. During this time, substantial due diligence was undertaken, and PJD shared its Protected Information and introduced Defendant to potential targets around the country.

50. PJD provided Protected Information pursuant to the protections of the NDA and LOI and the Joint Venture, and with the reasonable expectation that the Parties were pursuing the Joint Venture, including the steps referenced by the NDA and the LOI.

51. Defendant was and is obligated to use this information subject to the restrictions of the NDA and only for the purpose of the Joint Venture.

52. In reliance upon the protections of the Agreements and the Parties' relationship, PJD and Defendant negotiated a written Purchase and Contribution Agreement ("Purchase and Contribution Agreement") pursuant to which Defendant agreed to purchase PJD for the consideration outlined by the LOI.

6

53. The Purchase and Contribution Agreement provided that PJD was the Seller, the Johnson Trusts were Owners, and Defendant was the Buyer.

54. At some point currently unknown to Johnson, Defendant decided that it did not intend to perform the Agreements or go forward with the Purchase and Contribution Agreement, but that it would continue to extract and misuse PJD's Protected Information for the benefit of Defendant.

55. Defendant breached and repudiated the Agreements.

56. Johnson does not presently know when Defendant decided to repudiate the Agreements, but as late as June 9, 2021, Defendant was requesting, and PJD was providing, Protected Information to Defendant.

57. By June 3rd, 2021, the Parties had agreed upon the remaining material terms of the Purchase and Contribution Agreement, and Johnson expected the next step to be the execution of the contract documents and the funding contemplated therein.

58. On June 10th, the Parties had completed all know confirmatory diligence, consistent with the closing timeline and dates provided by Defendant.

59. Instead, the next day, June 11, 2021, Defendant informed Johnson's representative that Defendant had decided to "drop from the process" and not continue with its duties and obligations.

60. On June 29, 2021, after supposed additional consideration, Defendant restated that it would not proceed with any transaction with Johnson and was "still considering" proceeding with a national rollup without Johnson.

61. Between June 29, 2012 and the date of this complaint, TSG has been given additional opportunities to reverse its positions, but it has not done so.

62. Upon information and belief, Defendant extracted valuable information from PJD for the purpose of obtaining valuable Protected Information from PJD and then excluding PJD from the anticipated transactions and continuing with the anticipated structures and transactions with other participants in the drywalling industry that PJD had identified and recommended.

7

63. Defendant has used and disclosed Protected Information to other companies in violation of the NDA and the Joint Venture.

64. Upon information and belief, Defendant is actively using and misappropriating PJD's Protected Information for its own benefit and to attempt to build the national drywall company concerning which Defendant had acquired PJD's Protected Information, to compete unfairly with PJD, and to destroy the value to PJD of PJD's own Protected Information.

65. Upon information and belief, Defendant plans, if not enjoined by a court, to continue to use and exploit the Protected Information for its own benefit to the detriment of Johnson.

66. Defendant's breaches have been intentional, willful, malicious and done in bad faith.

67. The recovery of money damages from Defendant cannot fully compensate Johnson for the harm caused to Johnson by Defendant's bad faith and intentional breaches of the Agreements.

68. Equity requires that this Court provide the declaratory, injunctive, specific performance and other relief requested below.

## FIRST CLAIM FOR RELIEF

### (Declaratory Judgment)

69. Johnson incorporates by reference the foregoing allegations.

70. There is an actual case and controversy between the Parties.

71. Johnson requests that the Court enter a judgment pursuant to A.R.S. § 12-1831 declaring the rights and duties of the Parties in relation to the Agreements and the Parties' relationship.

72. Pursuant to Ariz. R. Civ. P. 57, the existence of another adequate remedy does not preclude a declaratory judgment that is otherwise appropriate.

73. Rule 57 authorizes the Court to order a speedy hearing of a declaratory judgment action.

WHEREFORE, Johnson respectfully requests that the Court declare: (1) the duties of the Agreements and the Joint Venture that are material here; (2) that Defendant has materially breached the Agreement and the Joint Venture; and (3) that the legal remedies available here are inadequate to make Johnson whole. Johnson further respectfully requests that the Court order Defendant to pay the fees, costs and expenses that Johnson has incurred because of the above actions of Defendant.

## SECOND CLAIM FOR RELIEF
### (Injunctive Relief)

74. Johnson incorporates by reference the foregoing allegations.

75. Defendant has breached its obligations under the Agreements.

76. PJD has performed its obligations under the NDA and LOI.

77. Defendant has agreed under the Agreements that PJD is entitled to injunctive relief to protect its Protected Information.

78. Johnson is further entitled to injunctive relief under the Arizona Uniform Trade Secrets Act, A.R.S. § 44-402.

79. Defendant has misappropriated and used PJD's Protected Information.

80. Defendant's breach of contract and misappropriation has interfered with PJD's business operations and its current and prospective business relationships with its employees (both current and prospective), customers, vendors, targets, potential business partners, commercial lenders, and investment

81. A preliminary injunction is necessary in this action to mitigate damage and provide just and equitable relief to PJD.

82. Preliminary, expedited discovery should be allowed so that PJD can move for and show its entitlement to a preliminary injunction.

83. Preliminary and permanent injunctive relief is necessary in this action to mitigate damage and provide just and equitable relief to PJD.

WHEREFORE, Johnson respectfully requests that the Court issue an order compelling discovery from Defendant and from third parties that is reasonably material

to Johnson's ability to move for and obtain a preliminary injunction enjoining Defendant from repudiating the Agreements and requiring Defendant to perform the Agreements, preventing Defendant from using or distributing the Protected Information; requiring Defendant to return or destroy any and all Protected Information; and, upon the completion of this return and destruction, to certify in writing to PJD the complete return and/or destruction. Johnson further respectfully requests that the Court order Defendant to pay the fees, costs and expenses that Johnson has incurred because of the above actions of Defendant.

## THIRD CLAIM FOR RELIEF

### (Breach of Contract – Specific Performance)

84. Johnson incorporates by reference the foregoing allegations.

85. Defendant has breached its contractual obligations in the Agreements.

86. The Parties agreed that the Agreements could be enforced by specific performance.

87. The terms of the Agreements are certain and fair.

88. PJD has not acted inequitably.

89. The anticipated benefit of an order of specific performance to PJD, to companies that would have participated in the transactions anticipated by the Agreements, and to the public would outweigh any hardship that specific performance would impose upon Defendant.

90. Legal remedies are inadequate in these circumstances.

WHEREFORE, PJD respectfully requests that the Court order Defendant to specifically perform its obligations under the Agreements. PJD further respectfully requests that the Court order Defendant to pay the fees, costs and expenses that PJD has incurred because of the above actions of Defendant.

## FOURTH CLAIM FOR RELIEF

### (Unjust Enrichment)

91. Johnson incorporates by reference the foregoing allegations.

92. Defendant has been unduly enriched and Johnson unduly harmed by Defendant's actions.

93. There is a connection between Defendant's enrichment and Johnson's injury.

94. The enrichment of Defendant and the injury to Johnson are unjustified.

95. There is no adequate remedy at law.

96. Allowing the enrichment of Defendant would be unjust and inequitable.

WHEREFORE, Johnson respectfully requests that the Court order Defendant to pay to Johnson the amount of the enrichment that Defendant has realized by its unlawful acts. Johnson further respectfully requests that the Court order Defendant to pay the fees, costs and expenses that Johnson has incurred because of the above actions of Defendant.

## FIFTH CLAIM FOR RELIEF

**(Breach of Contract - Damages)**

97. Johnson incorporates by reference the foregoing allegations.

98. Defendant has breached its contractual duties in the Agreements.

99. Defendant's breaches have proximately caused damage to PJD.

WHEREFORE, PJD respectfully requests that the Court order Defendant to pay to Johnson the damages that Defendant has proximately caused. PJD further respectfully requests that the Court order Defendant to pay the fees, costs and expenses that PJD has incurred because of the above actions of Defendant.

## SIXTH CLAIM FOR RELIEF

**(Breach of Implied Covenant of Good Faith and Fair Dealing)**

100. Johnson incorporates by reference the foregoing allegations.

101. The Agreements contain an implied covenant that Defendant would act in good faith and fair dealing with PJD.

102. Defendant has acted in bad faith and has not dealt with PJD fairly.

11

1   103. Defendant has breached its duty of good faith and fair dealing, causing
2   damages to PJD.

3   WHEREFORE, Johnson respectfully requests that the Court order Defendant to
4   pay to PJD the damages that Defendant has proximately caused by it breaches of the
5   implied covenant of good faith and fair dealing. PJD further respectfully requests that
6   the Court order Defendant to pay the fees, costs and expenses that PJD has incurred
7   because of the above actions of Defendant.

## SEVENTH CLAIM FOR RELIEF

### (Misappropriation of Trade Secrets – A.R.S. §44-401 to -407)

10   104. Johnson incorporates by reference the foregoing allegations.

11   105. All or some of PJD's Protected Information are trade secrets under A.R.S.
12   § 44-401 ("PJD's Trade Secrets").

13   106. This information constitutes "information" as defined in the Uniform
14   Trade Secrets Act and the Arizona Trade Secrets Act.

15   107. PJD's Trade Secrets derive economic value, actual or potential, from not
16   being readily ascertainable by proper means by other persons who can obtain economic
17   value from its disclosure or use.

18   108. This information is known only to PJD, certain of its employees, and
19   others who have a right to the information, and is not generally known.

20   109. PJD undertakes reasonable efforts to maintain the confidentiality of
21   PJD's Trade Secrets.

22   110. Defendant's actions constitute actual and threatened misappropriation of
23   PJD's Trade Secrets.

24   111. Such misappropriation by Defendant is in direct breach of duties owed to
25   PJD and violates A.R.S. § 44-401, *et seq.*

26   112. For the reasons stated above, Defendant's acts of misappropriation and
27   use of PJD's Trade Secrets are transgressions of a continuing nature for which PJD has

28

1  no adequate remedy at law and for which injunctive relief is available under A.R.S.
2  § 44-402.

3    113.   Unless Defendant is enjoined from future acts of misappropriation and
4  use of PJD's Trade Secrets, PJD will suffer irreparable injury.

5    114.   Defendant has misappropriated PJD's Trade Secrets by using PJD's
6  Trade Secrets for a purpose to which Johnson did not consent.

7    115.   Defendant has misappropriated PJD's Trade Secrets by disclosing and
8  using PJD's Trade Secrets which were acquired under circumstances giving rise to a
9  duty to maintain their secrecy.

10   116.   Defendant's misappropriation of PJD's Trade Secrets has proximately
11 caused damage to PJD.

12   117.   Defendant's misappropriation of PJD's Trade Secrets is and was willful
13 and malicious.

14   WHEREFORE, PJD respectfully requests that the court enjoin Defendant from
15 using or disclosing any of PJD's Trade Secrets in any fashion, including in pursuing a
16 strategy of acquiring drywall industry businesses. PJD further respectfully requests that
17 the Court order Defendant to pay to PJD the damages that Defendant has proximately
18 caused, as well as exemplary damages.

19                    **EIGHTH CLAIM FOR RELIEF**
20                       **(Breach of Fiduciary Duty)**

21   118.   Johnson incorporates by reference the foregoing allegations.

22   119.   Defendant and PJD entered into a venture to create a successful national
23 platform drywall company or consortium of companies.

24   120.   By virtue of the relationship with PJD, Defendant owed and owes
25 fiduciary duties to Johnson and PJD.

26   121.   In connection with this relationship with Johnson and PJD, the NDA and
27 LOI, Defendant obtained confidential information from PJD, including PJD's Protected
28 Information.

122. These fiduciary duties include a duty not to use or disclose PJD's Protected Information.

123. Defendant breached these fiduciary duties owed to PJD through the use or disclosure of PJD's Protected Information for the direct and indirect benefit of Defendant.

124. PJD is entitled to damages, including punitive damages, for the harm caused by Defendant.

125. PJD is entitled to a constructive trust to prevent Defendant from improperly benefitting from these breaches.

WHEREFORE, PJD respectfully requests that the Court order Defendant to pay to PJD the damages that Defendant has proximately caused by Defendant's breaches of fiduciary duty and that the Court order Defendant to pay punitive or exemplary damages in an amount sufficient to punish Defendant and to deter others from similar conduct. PJD further requests that the Court impose a constructive trust to prevent Defendant from improperly benefitting from these breaches.  PJD further respectfully requests that the Court order Defendant to pay the fees, costs and expenses that PJD has incurred because of the above actions of Defendant.

### NINTH CLAIM FOR RELIEF
### (Unfair Competition)

126. Johnson incorporates by reference the foregoing allegations.

127. This cause of action is for unfair competition under Arizona state law.

128. Defendant's acts as described above constitute unfair competition.

129. Defendant's conduct was and is intentional and in deliberate disregard of PJD's Protected Information, contractual rights, and fiduciary obligations owed to PJD.

130. PJD is entitled to recover not only actual damages, but also punitive or exemplary damages in an amount sufficient to deter Defendant from similar conduct in the future.

WHEREFORE, Johnson respectfully requests that the Court order Defendant to pay to PJD the damages that Defendant has proximately caused by Defendant's unfair competition and that the Court order Defendant to pay punitive or exemplary damages in an amount sufficient to punish Defendant and to deter others from similar conduct. PJD further respectfully requests that the Court order Defendant to pay the fees, costs and expenses that PJD has incurred because of the above actions of Defendant.

**PRAYER FOR RELIEF**

Johnson respectfully requests:

A.  Injunctive relief as set forth above;

B.  Monetary damages in a sum to be determined at trial, plus pre-judgment and post-judgment interest;

C.  Creation of a constructive trust to prevent Defendant from improperly benefitting from Defendant's breaches of contract and fiduciary duties owed to PJD;

D.  Reasonable attorneys' fees and costs pursuant to A.R.S. §§ 12-341 and 12-341.01 and the applicable contract provisions or laws; and

E.  For any and all other relief that this Court deems just.

DATED this 13th day of July, 2021.

OSBORN MALEDON, P.A.

By /s/ R. Douglas Dalton
R. Douglas Dalton
William D. Furnish
Bryce Talbot
2929 North Central Avenue, 21st Floor
Phoenix, Arizona 85012-2793

Attorneys for Plaintiffs

9063519

15