**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Paul Johnson Drywall Incorporated, et al., | No. CV-21-01408-PHX-DWL |
| Plaintiffs, | **ORDER** |
| v. | |
| Sterling Group LP, | |
| Defendant. | |

Pending before the Court is Plaintiffs' renewed motion to seal portions of the second amended complaint ("SAC"). (Doc. 42.) For the following reasons, the motion is granted in part and denied in part.

## BACKGROUND

In previous sealing-related orders, the Court noted that the sensitivity of many of the proposed redactions was not "obvious" and that it was "unclear why the public disclosure of such information would result in tangible harm to the parties." (Doc. 26 at 2.) The Court also emphasized that future sealing requests "must explain, with specificity, why each proposed redaction meets the standard for sealing." (*Id.*)

On September 8, 2021, Plaintiffs filed a notice of filing their SAC (Doc. 29) and lodged under seal a redlined version (Doc. 30) and clean version (Doc. 31) of their SAC—both containing highlighting to indicate the proposed redactions, pursuant to the Court's August 20, 2021 order (Doc. 15 at 6) and August 24, 2021 order (Doc. 18 at 5). Plaintiffs also filed the motion to seal the SAC. (Doc. 28.)

On September 13, 2021, the Court denied the motion without prejudice, noting that Plaintiffs' explanations were "vague and conclusory" and did "not aid the Court in understanding why or how certain information could cause competitive harm." (Doc. 32 at 2.) The Court ordered Plaintiffs to "(1) file a renewed motion to seal portions of the SAC or (2) file in the public record an amended complaint without redactions." (*Id.* at 3.)

On September 27, 2021, Plaintiffs filed a renewed motion to seal portions of the SAC (Doc. 42) and lodged under seal a proposed redacted version of the SAC (Doc. 44).

On October 12, 2021, Defendant filed a partial opposition. (Doc. 49.)

On October 15, 2021, Plaintiffs filed a reply. (Doc. 51.)

**DISCUSSION**

I.   Legal Standard

The public has a general right to inspect judicial records and documents, such that a party seeking to seal a judicial record must overcome "a strong presumption in favor of access." *Kamakana v. City & Cty. of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006). To do so, the party must "articulate compelling reasons supported by specific factual findings that outweigh the general history of access and the public policies favoring disclosure . . . ." *Id.* at 1178-79 (internal quotation marks and citations omitted). The Court must then "conscientiously balance the competing interests of the public and the party who seeks to keep certain judicial records secret." *Id.* at 1179 (internal quotation marks omitted). "After considering these interests, if the court decides to seal certain judicial records, it must base its decision on a compelling reason and articulate the factual basis for its ruling, without relying on hypothesis or conjecture." *Id.* (internal quotation marks omitted).

The "stringent" compelling reasons standard applies to all filed motions and their attachments where the motion is "more than tangentially related to the merits of a case." *Ctr. for Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1096, 1101 (9th Cir. 2016). The "compelling reasons" standard also applies to pleadings, particularly to the complaint and its amendments, as the operative complaint is the crux of any civil action. *See, e.g.*, *In*

*re Google Location Hist. Litig.*, 514 F. Supp. 3d 1147, 1161 (N.D. Cal. 2021) ("[T]his Court and many others have held that the compelling reasons standard applies to the sealing of a complaint precisely because the complaint forms the foundation of the lawsuit."); *Pintos v. Pac. Creditors Ass'n,* 565 F.3d 1106, 1115 (9th Cir. 2009) (noting that the "compelling reasons" standard applies to most judicial records).

"The factors relevant to a determination of whether the strong presumption of access is overcome include the public interest in understanding the judicial process and whether disclosure of the material could result in improper use of the material for scandalous or libelous purposes or infringement upon trade secrets." *Hagestad v. Tragesser*, 49 F.3d 1430, 1434 (9th Cir. 1995).

Conclusory allegations of harm do not meet the "compelling reasons" standard. *Oliner v. Kontrabecki*, 745 F.3d 1024, 1026-27 (9th Cir. 2014) ("[A] naked conclusory statement that publication . . . will injure the bank in the industry and local community falls woefully short of the kind of showing which raises even an arguable issue as to whether it may be kept under seal."); *Primus Grp., Inc. v. Inst. for Env't Health, Inc.*, 395 F. Supp. 3d 1243, 1270 (N.D. Cal. 2019) ("conclusory allegations of harm" did not "outweigh the public's right of access"). "The party seeking to seal any part of a judicial record bears the heavy burden of showing that the material is the kind of information that courts will protect and that disclosure will work *a clearly defined and serious injury* to the party seeking closure." *Oliner*, 745 F.3d at 1026 (emphasis added). Litigation sometimes airs the internal workings of a company which are otherwise not available to the public. Vaguely asserting that disclosure of certain material would result in competitive harm—without explaining why or how this is so—will not suffice. *Id.*[1] It is the moving party's burden to provide facts, arguments, and legal authority that would allow the Court to "articulate the factual basis"—"without relying on hypothesis or conjecture"—for ruling that compelling reasons "outweigh the general history of access and the public policies favoring

---

[1] Furthermore, "[t]he mere fact that the production of records may lead to a litigant's embarrassment, incrimination, or exposure to further litigation will not, without more, compel the court to seal its records." *Kamakana*, 447 F.3d at 1179.

1  disclosure." *Kamakana*, 447 F.3d at 1178-79.

2  II.     Analysis

3  Unfortunately, many of Plaintiffs' explanations in the renewed motion remain inadequate. Plaintiffs again have lumped myriad pages of proposed redactions together, such that the explanations offered are not specific to the redactions themselves. Again, the Court is left to guess at why *each specific* redaction purportedly "paints a road map to misappropriate [Plaintiffs'] secret and hard-earned recipe for success." (Doc. 42 at 6.) Again, the explanations are often vague and conclusory. Plaintiffs assert that disclosure of wide swaths of information "would convey significant information" and "would create an unfair advantage" for Plaintiffs' competitors (*id.* at 4), without explaining *what* is "significant" about each redaction or *how* disclosure would create an unfair advantage.

Although Plaintiffs assert that the redacted information could provide some sort of "road map" for their competitors, the Court finds itself lacking any such road map as it makes its sealing determinations. Nevertheless, the Court has carefully examined each proposed redaction and concludes that the following material does not meet the sealing standard and may not be redacted:

**¶ 19**

Plaintiffs assert that "[d]isclosure of the highlighted information in paragraph 19 would attract significant attention from PJD's existing distributors, manufacturers, customers and create inordinate and harmful competition." (Doc. 42 at 4.) But attracting "significant attention" is not serious harm, and the suggestion that this attention would "create competition" is both speculative and vague. Plaintiffs have not explained how or why this competition might be created, nor have they demonstrated that this competition would constitute a "serious injury." *Oliner*, 745 F.3d at 1026. Moreover, having reviewed the proposed redaction, the Court finds the material to be non-specific and innocuous.[2]

…

---

[2] Indeed, a reader left to guess at what the redaction contains—especially after reading Plaintiffs' assertion that the small redaction would "attract significant attention"—would likely be disappointed to discover how vague and nonrevealing the proposed redacted material is.

- 4 -

**¶ 42**

Plaintiffs assert that the proposed redactions in paragraph 42 are necessary "to prevent the public disclosure of information to current and potential competitors, distributors and manufacturers, and the acquisition targets regarding PJD's concrete development plans, actions that PJD has already commenced, PJD's methods for developing its expansion plans and strategies." (*Id.* at 5.) But the material Plaintiffs seek to redact is generic. It does not appear to reveal any "methods for developing its expansion plans and strategies," and Plaintiffs have not explained how its disclosure could cause serious harm.

**¶ 46**

Plaintiffs correctly note that the Court has previously ruled that the Letter of Intent ("LOI") may be sealed, subject to the caveat that Defendant may file a motion to unseal it at a later date if desired. (Doc. 38 at 1.) However, Plaintiffs then assert that the proposed redaction in paragraph 46 "set[s] forth significant Confidential Information terms from the LOI," disclosure of which "would significantly impede PJD's ability to pursue its strategic expansion plans." (Doc. 42 at 5-6.) The Court disagrees with this characterization. The nonspecific description of the LOI in paragraph 46 does not "set forth Confidential Information terms" in any way perceivable by the Court. Even where documents might be subject to sealing, "non-substantive references to or general discussions of those documents are not similarly protected." *In re McCormick & Co., Inc., Pepper Prod. Mktg. & Sales Pracs. Litig.*, 316 F. Supp. 3d 455, 467 (D.D.C. 2018).

**¶ 52**

Plaintiffs assert that the proposed redactions in paragraph 52 "confirm[] the significant value Sterling and others placed on PJD's Confidential Information" and that if others knew that Sterling placed this significant value on the information, this knowledge would somehow "create unfair and harmful competition." (Doc. 42 at 6.) Plaintiffs do not explain how Defendant's speculative opinion as to what it might accomplish by using Plaintiffs' model could cause serious injury to Plaintiffs if it were widely known.

Considering that "[t]he mere fact that the production of records may lead to a litigant's embarrassment, incrimination, or exposure to further litigation will not, without more, compel the court to seal its records," *Kamakana*, 447 F.3d at 1179, it stands to reason that the mere fact that publication of certain information could lead others to think *highly* of a party also cannot, without more, justify sealing. Nothing in this paragraph reveals what the model *is* or *how* it works, just *that* it works (in Defendant's opinion), and that the results might be impressive. This might inspire envy in Plaintiffs' competitors, but it would not give them any ability to more effectively compete with Plaintiffs.

### ¶¶ 22, 44, 54, 55, 57, 58, 59, 60, 63, 69, 71, 72, 73, 75

Plaintiffs lumped together all of the proposed redactions in paragraphs 54-60, 63, 66, 69, 70-73, and 75, despite the fact that the material at issue is disparate and not amenable to being painted with a broad brush. Plaintiffs claim that "[t]he information, and its specific combination as presented in these paragraphs, has been developed and protected at great expense and over a great length of time by PJD, and results from creating, testing, and perfecting such forms, processes, and techniques," and that "the combination of each of these individual elements paints a road map to misappropriate PJD's secret and hard-earned recipe for success." (Doc. 42 at 6.) Plaintiffs further claim that "[d]isclosure of this information would provide to potential competitors, lenders, financiers, partners, targets, distributors and manufacturers, a virtual recipe for many of the confidential strategies, financial tools, plans, savings and efficiencies that PJD has perfected over the last 50+ years and which have allowed PJD to thrive for decades." (*Id.*) This "virtual recipe" would purportedly "allow persons in all of these categories to compete; enhance their purchasing models; manipulate pricing, debt terms, and equity participation terms; revise their geographic strategies; modify or eliminate their willingness to identify targets; modify or eliminate their willingness to trade on current terms; and utilize PJD's Confidential Information to compete on growth and profitability using PJD's levers and secrets to seriously harm PJD." (*Id.* at 6-7.) Paragraphs 22 and 44 are lumped together with a similar explanation. (*Id.* at 4-5.)

Nevertheless, many of the proposed redactions do nothing of the sort.

Paragraph 54 does not contain any information that could be a part of Plaintiffs' "virtual recipe"—it merely lists categories, without including any information in those categories. The categories themselves reveal nothing. The same is true of paragraphs 55(a), 57(a), 58(a), and 58(c). In a similar vein, the categories in paragraph 59 appear to be special buzzword categories, likely created by Plaintiffs, which have no inherent meaning and, again, reveal nothing about their contents. The redactions in paragraphs 60 and 63 likewise include descriptions sans details. If the details were included, they might reveal Plaintiffs' secrets of success, but without the details, there is nothing sensitive about these descriptions.

Paragraph 57(b) contains information that merely suggests that Plaintiffs do not resort to illegal tactics that are allegedly used by most of their competitors. Regulatory compliance cannot, in itself, be a trade secret. If a party's *illegal* practices are not necessarily subject to sealing, *Kamakana*, 447 F.3d at 1179, it follows that a party's decision *not* to engage in illegal practices surely cannot be considered highly secretive.

Paragraph 69 asserts that Defendant believed a certain model devised by Plaintiffs has advantages that could reap favorable results. However, the allegations in paragraph 69 do not provide any specifics as to how this model works or how it might accomplish the feat Defendant allegedly expected. Without these details, there is no risk of competitors gaining any sort of edge. For this reason, the redaction in paragraph 22 is likewise unnecessary, as is the redaction at paragraph 44, lines 27-28.

As for paragraphs 71-77, 84, 87, 125, and 126, as well as certain exhibit redactions (Doc. 44 at 48-49), the Court previously found that the proper names were subject to sealing (Doc. 38) because the Court accepted Plaintiffs' argument that "the identification of the competitor drywall installation company and the individual competing individual/distribution company would create barriers to doing business in the future with that individual and company and would harm PJD's ability to do business with other potential partners, acquisition targets, distributors, equity partners and debt partners who

could not rely on their identities remaining confidential in future business dealings with PJD." (Doc. 34 at 5.). However, Defendant now states that it was Defendant—not Plaintiffs—that "identified and sourced these individuals," such that there is no way their identities could somehow be Plaintiffs' "trade secret." (Doc. 49 at 2.) That makes sense.

Plaintiffs' reply, on the other hand, does not make sense. To the extent Plaintiffs are arguing that they could be disadvantaged in the future because other entities might believe that doing business with Plaintiffs could, theoretically, result in their identities being disclosed if hypothetical future litigation required such disclosure, that does not even come close to meeting the sealing standard. This is a rather universal truth, with any business dealing, with any party, and there is nothing about disclosing the names of the third parties here that would signal to any other entity that there is a special danger in doing business with Plaintiffs. And even if there *were* some possibility that disclosure could make Plaintiffs look bad in some way to others, that is simply not enough to override the public's interest in disclosure. *Kamakana*, 447 F.3d at 1179. And Plaintiffs' concern that "[u]nless the names of the individual and company remain sealed, any of PJD's competitors could potentially obtain PJD's confidential information from the individual or company" appears speculative and remote and at any rate falls short of "improper use of the material for scandalous or libelous purposes or infringement upon trade secrets." *Hagestad*, 49 F.3d at 1434.

The remainder of the redacted material in paragraphs 71 and 73 is generic, and the remainder of the redacted material in paragraph 75 contains buzzwords, categories, and references to plans and strategies without explanations or specifics that would allow competitors to know anything about these plans and strategies. These paragraphs contain no details that would, if made public, cause serious harm to Plaintiffs, with the possible exception of the number at line 17. The Court will allow Plaintiffs to redact the numeral only at paragraph 75(h), line 17. The remainder of these paragraphs may not be redacted.

Finally, paragraph 72 contains an assortment of the same deficiencies described above—buzzword categories without inherent meaning and broad descriptions that lack

the kind of details that would reveal Plaintiffs' secret recipe for success. The exception is, perhaps, 72(b), which provides information that may or may not be sensitive enough to outweigh the public right of access. That is difficult for the Court to determine, as Plaintiffs failed to explain the meaning and importance of this information, let alone how it could be exploited by competitors.

The Court will take this opportunity to express some frustration. Despite the Court's repeated admonitions that sealing requests "must explain, with specificity, why each proposed redaction meets the standard for sealing" (Docs. 26, 32), and despite having been afforded a second chance to file an adequate motion, Plaintiffs failed to address each proposed redaction on an individual basis. Because Plaintiffs are not entitled to a third bite at the apple on this sealing motion, the Court must decide, without Plaintiffs' help, whether certain redactions are necessary to prevent competitive harm. The Court is ill-positioned for this task, and ultimately, Plaintiffs have failed to meet their burden by again neglecting to provide the explanations the Court needs to "articulate the factual basis"—"without relying on hypothesis or conjecture"—for ruling that compelling reasons "outweigh the general history of access and the public policies favoring disclosure." *Kamakana*, 447 F.3d at 1178-79. Nevertheless, the Court will allow Plaintiffs to redact the material *within the parentheses only* in paragraph 72(b), due in part to a determination that the public's interest in that material is minimal.

**The Remaining Redactions**

The Court has specifically addressed the redactions that give cause for concern. The few remaining redactions meet the sealing standard, for the reasons asserted in Plaintiffs' motion.

As noted above, Plaintiffs will not be afforded another chance to justify their proposed redactions, as they were given ample warnings and chances already, and at this point, the Court has spent a disproportionate amount of time on the sealing issues in this case. Pursuant to LRCiv 5.6(e), Plaintiffs must file, by October 26, 2021, an updated version of the SAC in the public record, with only the approved redactions included.

Accordingly,

**IT IS ORDERED** that Plaintiffs' renewed motion (Doc. 42) is granted **in part and denied in part**.

**IT IS FURTHER ORDERED** that Plaintiffs file, by October 26, 2021, an updated version of the SAC in the public record, with only the approved redactions included.

Dated this 19th day of October, 2021.

Dominic W. Lanza
United States District Judge